**ZIMMERMAN REED LLP**
Ryan J. Ellersick (SBN 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel (877) 500-8780
Fax (877) 500-8781
ryan.ellersick@zimmreed.com

**ZIMMERMAN REED LLP**
Zain A. Shirazi (SBN 302841)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel (612) 341-0400
Fax (612) 341-0844
zain.shirazi@zimmreed.com

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| NANCY SAMBERG, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br>    v.<br><br>WHITESTONE HOME FURNISHINGS, LLC d/b/a SAATVA<br><br>              Defendant. | Case No.: 3:25-CV-10767<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1. Defendant Whitestone Home Furnishings, LLC d/b/a Saatva ("Defendant" or "Saatva") sells mattresses through its website, www.saatva.com (the "Website"). On its Website, Defendant markets its mattresses as "Crafted in the U.S.A.," "Crafted in America," "crafted in the U.S. when you order it," "made to order and assembled in the U.S.," "produced to the highest standard of American craftsmanship," and "manufactured for you in America."[1] In television ads, Saatva similarly claims that its mattresses are "handcrafted and assembled in American factories."[2] These are unqualified "Made in USA" advertisements.

2. The effect of Defendant's unqualified Made in USA marketing claims is to cause reasonable consumers to believe that Defendant sells mattresses that are produced in the United States using domestic materials.

3. Saatva uses these Made in USA claims to emphasize the quality of its mattresses, positioning itself as unique among competitors in the industry because its mattresses are "Crafted in America."

4. In fact, Saatva mattresses are not made in the USA. As Saatva itself acknowledges in the fine print on its Website, all its mattresses are made from "globally sourced materials."[3] In a recent blog post on its Website, Saatva admitted that its mattress prices would increase because of tariffs on foreign raw materials used to manufacture the mattresses. Saatva acknowledged that, while it uses "mostly US-sourced materials," "some of the raw materials [it] use[s] may be subject to price increases," due to the tariffs.[4]

5. Saatva is able to charge a price premium on its mattresses because of its Made in USA advertising.

6. Reasonable consumers understand that Made in USA advertising—such as claims that Saatva's mattresses are "Crafted in America"—means that all or virtually all of a product and its component parts are made in the United States.

---

[1] https://truthinadvertising.org/articles/saatva/
[2] *Id.*
[3] https://www.saatva.com/ ("Crafted in America with uncompromising quality")
[4] https://www.saatva.com/blog/mattress-tariffs/

2
CLASS ACTION COMPLAINT

7. Plaintiff reasonably relied on Defendant's deceptive Made in USA advertising when purchasing a mattress from Saatva. Had Plaintiff known the truth—that Saatva mattresses are not Made in the USA but are substantially composed of "globally sourced materials"—she would not have purchased the mattress or would have paid less for it. As a result, Plaintiff was deceived and suffered economic injury.

8. Plaintiff brings this lawsuit on behalf of herself and classes of similarly situated individuals to recover damages for Defendant's false and misleading advertising, and to seek an injunction to stop Saatva from continuing its false and misleading Made in USA advertising.

9. Plaintiff asserts the following claims: (I) violation of Cal. Bus. & Prof. Code § 17533.7; (II) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (III) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and (IV) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and breach of contract.

**PARTIES**

15. Plaintiff Nancy Samberg is a natural person who resides and intends to remain in El Granada, California. At all relevant times, Plaintiff Samberg was a citizen of California and resident of San Mateo County.

16. Defendant Whitestone Home Furnishings LLC d/b/a Saatva is a Delaware limited liability company with its principal place of business at 19-02 Whitestone Expressway, 201, Whitestone, NY 11357.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed classes, and at least one member of the classes is a citizen of a state different from Defendant.

18. This Court has personal jurisdiction over Defendant because Defendant purposely availed itself of the benefits of the forum and because a substantial portion of the events giving rise to this complaint occurred in this District. Defendant does business in California. Defendant advertises and

3
CLASS ACTION COMPLAINT

sells its merchandise in California, and Defendant serves a market for its mattresses in California. Defendant has sold its mattresses to California consumers through the Website.

19. Venue is proper under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff Samberg resides and purchased Defendants' coffee in this District.

### DIVISIONAL ASSIGNMENT

20. Pursuant to Civil L.R. 3-2(c), this matter should be assigned to the San Francisco Division because a substantial part of the events or omissions giving rise to the claims occurred in San Mateo County, where Plaintiff resides.

### FACTUAL ALLEGATIONS

**A.   Saatva Deceptively Advertises its Mattresses as Made in the USA.**

21. "U.S. consumers' demand for 'Made in America' products is robust."[5] In a recent survey, "Nearly two-thirds of U.S. consumers said they routinely sought out 'Made in America' products over the past year."[6] Consumers are also often willing to pay more for products that are made in the United States.[7]

22. Survey results also show that the preference for American-made products persists despite inflationary pressures. A 2022 survey of approximately 2,000 U.S. adults found that "[a]s challenging as inflation is, nearly three-quarters (72%) of respondents [said] they seek out American-made products very often or somewhat often."[8] The survey also revealed that "many [consumers] are willing to pay a premium for domestically made goods: Nearly half (48%) say they'd be willing to pay around 10–20% more; 17% say they'd be willing to pay ~30% more for an American-made product over an imported one."[9]

23. Given the value consumers place on Made in USA claims, California law makes it unlawful for a company to advertise merchandise using phrases such as, "'Made in U.S.A.,' 'Made in

---

[5] https://pro.morningconsult.com/analyst-reports/made-in-america-reshoring-consumer-goods
[6] *Id.*
[7] *Id.*
[8] https://www.retailbrew.com/stories/2022/07/28/consumers-will-pay-more-for-american-made-products-but-inflation-takes-a-toll-poll
[9] *Id.*

America,' 'U.S.A.,' *or similar words*, if the merchandise or *any article, unit, or part thereof*, has been entirely or substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7 (emphasis added).

24. Saatva's claims that its mattresses are "Crafted in the U.S.A.," "Crafted in America," "crafted in the U.S. when you order it," "made to order and assembled in the U.S.," "produced to the highest standard of American craftsmanship," and "manufactured for you in America," all incorporate the phrase "U.S.A." or "similar" phrasing to convey that the mattresses are Made in the USA. Because the materials for its mattresses are "substantially made, manufactured, or produced outside of the United States," Saatva's advertising violates California law.

25. Similarly, the Federal Trade Commission ("FTC") has a regulation that governs Made in USA advertising. *See* 16 C.F.R. § 323 *et. seq.* That regulation defines Made in USA advertising broadly to include "any unqualified representation, express or implied, that a product or service, or a specified component thereof, is of U.S. origin, including, but not limited to, a representation that such product or service is 'made,' 'manufactured,' 'built,' 'produced,' 'created,' or '*crafted*' in the United States or in America, or any other unqualified U.S.-origin claim." 16 C.F.R. § 323.1(a) (emphasis added). The FTC regulation prohibits labeling "any product as Made in the United States unless the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and *all or virtually all ingredients or components of the product are made and sourced in the United States*." 16 C.F.R. § 323.2 (emphasis added).

26. FTC guidance also makes clear that, for Made in USA claims to comply with the law, "all or virtually all ingredients or components of the product [must be] made and sourced in the United States. That is, the product should contain no — or negligible — foreign content." *See* FTC, "Complying with the Made in USA Standard," July 2, 2024, *available at* https://www.ftc.gov/business-guidance/resources/complying-made-usa-standard (last visited December 15, 2025) (hereinafter "FTC Guidance"). Because Saatva's mattresses are composed of "globally sourced materials," that are not "all or virtually all . . . made and sourced in the United States," Defendant's Made in USA advertising violates FTC regulations.

27. The following is a sample of some of the Made in USA advertisements that appear on Saatva's Website:



Figure 1 – "Crafted in the U.S.A."



Figure 2 – "handcrafted to order in the U.S."

> Shop made-to-order mattresses at Saatva
>
> <u>All of our mattresses are made-to-order</u>. When you purchase a Saatva, you get a "factory fresh" mattress that's been manufactured for you in America.
>
> You'll never get a mattress that's been collecting dust in a warehouse or one that's been folded and rolled up into a small shipping box.
>
> Sleep is one of the most important investments you can make in your health and well-being. Choosing a made-to-order mattress ensures you're not just buying what's available—you're buying what's right for you.
>
> We have a wide range of mattresses to suit every sleep style. You can take our mattress quiz or visit one of our Viewing Rooms to find your perfect match.

*Figure 3 – "manufactured for you in America"*

28. The phrase "Crafted in the U.S.A." reflected in *Figure 1* appears on the "specifications" page for each mattress sold on the Website. Thus, the Made in USA advertising is the same for all mattresses sold on the Website.

**B.   Saatva's Mattresses are Made of Materials Produced Outside the United States.**

29. Despite its prominent Made in USA advertising, Saatva acknowledges that its mattresses are, in fact, made from foreign-sourced materials.

30. In the fine print on its Website, Saatva states that "[e]very Saatva luxury mattress is made to order and assembled in the U.S. with the highest quality, *globally-sourced materials*."[10] On the Green Initiatives page of the Website, Saatva likewise states, "Our mattresses are assembled in the U.S. with the best *globally sourced materials*."[11] On a page of the Website emphasizing the superior quality of Saatva mattresses, Saatva states, "Assembling our mattresses in America with our nationwide network

---

[10] https://www.saatva.com/ ("Crafted in America with uncompromising quality") (emphasis added).
[11] https://www.saatva.com/green-initiatives (emphasis added)

of factories allows us to source the highest quality materials from *around the globe at scale.*"¹² Notably, when describing the source materials for its mattresses, Saatva does not claim that any of the materials are produced domestically, instead emphasizing that assembly of "globally sourced materials," occurs in the U.S.

31. Saatva's dependence on foreign materials to produce its mattresses is so significant that Saatva dedicated a blog post to the impact of tariffs on its mattress pricing. In an August 2025 blog post, Saatva stated, "We're proud to handcraft and assemble our mattresses in our American factories using mostly US-sourced materials. Due to new global trade tariffs, however, some of the raw materials we use may be subject to price increases."¹³ In response to the question, "Are there tariffs on mattresses?" the blog post stated, "Yes there are tariffs on mattresses manufactured outside the US as well as on globally-sourced components—such as steel for coils, latex, and fabric—used to assemble mattresses in America."¹⁴

32. In early 2025, Saatva used potential price increases associated with the tariffs to run a "Beat the Tariffs" sale campaign, offering prospective Saatva consumers 15% off:



*Figure 4: "Don't Wait, Beat Tariff Increases!"*

33. In an article describing the "Beat the Tariffs" sale, Saatva's "director of public relations Shari Ajayi said that even though Saatva manufactures mattresses in the United States, 'certain components — such as wire, hardware, and some specialty fabrics — are sourced from international partners, including Canada.'"¹⁵ According to the article, Ajayi added, "Like many American manufacturers, we depend on a global supply chain."¹⁶ Ajayi went on to say, "While our goal is always

---

¹² https://www.saatva.com/pricing (emphasis added).
¹³ https://www.saatva.com/blog/mattress-tariffs/
¹⁴ *Id.*
¹⁵ https://nymag.com/strategist/article/saatva-beat-tariff-increases-sale-2025.html
¹⁶ *Id.*

to maintain price stability for our customers, we are proactively encouraging shoppers to take advantage of current pricing," noting that "future increases may be necessary depending on how trade developments unfold."[17] In another article discussing the tariff-related sale, "Ajayi said some components — such as latex harvested from rubber trees and fabrics used in upholstered frames — are sourced internationally, including Canada, making the company vulnerable to tariff shifts."[18]

34.     Saatva's reliance on foreign-sourced materials is not de minimis. According to Saatva's director of public relations, Saatva "depend[s] on a global supply chain," including for "wire, hardware, and some specialty fabrics." Saatva's dependence is so significant that the company was "vulnerable to tariff shifts," and offered a 15% sale in advance of price hikes associated with the tariffs.

35.     Given Saatva's substantial reliance on "globally sourced materials" to assemble its mattresses, Saatva does not meet the safe harbor under California's Made in USA law, which permits Made in USA advertising "if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product." Cal. Bus. & Prof. Code § 17533.7(b).

**C.    Plaintiff was Deceived by Defendant's Made in USA Advertising.**

36.     At the time Plaintiff purchased a mattress from the Saatva Website, the Website stated that all mattresses were "Made in the U.S.A." and that "[e]very Saatva mattress is made to order and handcrafted in America with care and pride, using only the highest quality, consciously sourced materials."[19]

37.     Plaintiff relied on and was deceived by Saatva's Made in USA advertising. Plaintiff tries to support companies that sell products that are produced in the United States. She will sometimes select products that are made in the United States over competitors, and she is sometimes willing to pay more for products that are made in the United States. In November 2023, while residing in El Granada, California, Plaintiff used the Saatva Website to shop for and purchase a Saatva Classic Mattress. Plaintiff relied on Saatva's claims that its mattresses were "Made in the U.S.A." and understood that the mattress

---

[17] *Id.*
[18] https://www.modernretail.co/marketing/more-brands-turn-to-tariff-sales-to-drive-demand-before-prices-increase/
[19] https://web.archive.org/web/20231125002614/https://www.saatva.com/mattresses/saatva-classic

she purchased was not only assembled in the U.S. but was also made from domestically sourced materials. Had Plaintiff known that the mattress was made from foreign-sourced materials, she would not have purchased the mattress or would have paid less for it. As a result of Defendant's deceptive Made in USA advertising, Plaintiff lost money and suffered economic injury.

## **CLASS ACTION ALLEGATIONS**

38. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following proposed classes:

> "California Class": all persons who, while in the state of California and within the applicable statute of limitations, purchased a Saatva mattress from the Website for personal, family, or household purposes.

> "Nationwide Class": all persons in the United States who, within the applicable statute of limitations, purchased a Saatva mattress from the Website.

39. Excluded from each of the Classes are Defendant; officers, directors, and employees of Defendant; any entity in which Defendant has a controlling interest in, are a parent or subsidiary of, or which is otherwise controlled by Defendant; and Defendant's affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assignees. Also excluded are the Judges and Court personnel in this case and any members of their immediate families.

40. Plaintiff reserves the right to modify and/or amend the Class definitions, as necessary.

41. All members of the proposed Classes are readily identifiable through Defendant's records.

42. All requirements for class certification under Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) are satisfied.

43. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Plaintiff is informed and believes that the proposed Classes includes tens of thousands or hundreds of thousands of people based on public reports regarding Defendant's operations and revenue. The precise number of the Class Members is unknown to Plaintiff but may be ascertained from Defendant's records.

44. **Commonality and Predominance.** This action involves common questions of law and fact to the Plaintiff and the Class Members, which predominate over any questions only affecting

individual Class Members. These common legal and factual questions include, without limitation: whether Defendant engaged in the course of conduct alleged; whether Defendant used Made in USA advertising and labeling; whether Defendant's mattresses are made of materials sourced and produced outside of the United States; whether Defendant's Made in USA advertising is likely to deceive a reasonable consumer; whether Defendant's Made in USA advertising is material to a reasonable consumer; whether Defendant's Made in USA advertising violates the laws identified below; whether Plaintiff and the Class members have suffered economic injury as a result of Defendant's false and/or deceptive practices; and whether Plaintiff and Class members are entitled to actual damages and or other relief.

45. Defendant engaged in a common course of conduct giving rise to the claims asserted by Plaintiff on behalf of herself and the Classes. Individual questions, if any, are slight by comparison in both quality and quantity to the common questions that control this action.

46. **Typicality.** Plaintiff's claims are typical of those of other Class Members because, like members of each Class, Plaintiff purchased a mattress from Saatva's Website. Defendant's false and deceptive Made in USA advertising impacted all Class Members in a similar manner.

47. **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes and has retained counsel experienced in complex consumer class action litigation. She intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Classes.

48. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in managing this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court. Absent a class action, individual consumers like Plaintiff would find the cost of litigating their claims prohibitively high and would have no effective remedy for monetary relief.

## LEGAL CLAIMS

## COUNT I

**Violation of Cal. Bus. & Prof. Code § 17533.7**

*(On Behalf of Plaintiff and the California Class)*

49. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

50. Under California law, it is unlawful "to sell or offer for sale in [California] any merchandise on which merchandise or on its container there appears the words 'Made in U.S.A.,' 'Made in America,' 'U.S.A.' or similar words if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7(a).

51. Defendant has violated, and continues to violate, this law by selling and offering for sale its mattresses within California that it advertises and labels as made in the United States.

52. The safe harbor contained in Cal. Bus. & Prof. Code § 17533.7(b) does not apply. That safe harbor provides that a company may use foreign articles or parts if those foreign articles or parts constitute "not more than 5 percent of the final wholesale value of the manufactured product." Saatva admits that its mattresses are made from "globally sourced materials," and Saatva does not disclose any domestic materials used to make its mattresses. Instead, according to Saatva's director of public relations, "Saatva "depend[s] on a global supply chain," including for "wire, hardware, and some specialty fabrics." Saatva's dependence is so significant that the company was "vulnerable to tariff shifts," and offered a 15% sale in advance of price hikes associated with the tariffs. Given the evidence of Saatva's substantial reliance on foreign-sourced materials, the "globally sourced materials," are more than 5% of the final wholesale value of Defendant's mattresses.

53. Similarly, the safe harbor contained in Cal. Bus. & Prof. Code § 17533.7(c) does not apply. That safe harbor provides that companies may source foreign products that constitute up to 10 percent of the final wholesale value of the manufactured product if "[t]he manufacturer of the merchandise shows that it can neither produce the article, unit, or part within the United States nor obtain

the article, unit, or part of the merchandise from a domestic source." Defendant cannot meet its burden to show that it is unable to source the materials for its mattresses from within the United States.

54. By deceptively marketing its mattresses as Made in the USA, Defendant engaged in conduct likely to mislead reasonable consumers.

55. As a direct and proximate result of Defendant's violations, Plaintiff and the California Class members are entitled to damages and/or restitution of excess monies paid to Defendant relating to the false and deceptive Made in USA representations.

## COUNT II

## Violation of California's Consumer Legal Remedies Act ("CLRA")

## Cal. Civ. Code § 1750 et. seq.

*(On Behalf of Plaintiff and the California Class)*

56. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

57. Plaintiff and the California Class are "consumers," as defined by California Civil Code § 1761(d).

58. Defendant sells "goods" as defined by California Civil Code § 1761(a).

59. Plaintiff and the California Class have engaged in "transactions" with Defendant as defined by California Civil Code § 1761(e).

60. As alleged above, Defendant has undertaken unfair or deceptive acts or practices in violation of California's CLRA, including:

    a. "Misrepresenting the source, sponsorship, approval, or certification of goods or services," § 1770(a)(2);

    b. "Using deceptive representations . . . in connection with goods or services," § 1770(a)(4);

    c. "Representing that goods or services have . . . characteristics . . . that they do not have," § 1770(a)(5);

    d. "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," § 1770(a)(7); and

       e.      "Advertising goods or services with intent not to sell them as advertised," § 1770(a)(9).

61. Defendant misrepresented to consumers that its mattresses were made in the United States when, in fact, the materials for the mattresses are sourced and produced outside the United States.

62. Plaintiff reasonably relied on Defendant's deceptive, untrue, and misleading advertising. The misleading Made in USA claims were material because a reasonable consumer would consider whether a product was made in the United States an important factor in deciding to purchase the product. The Made in USA claims were a substantial factor in Plaintiff's decision to purchase Defendant's mattress.

63. Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff and the California Class. Absent Defendant's misrepresentations, Plaintiff would not have purchased Defendant's mattress or would have paid substantially less for it.

64. Plaintiff seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and to make whole Plaintiff and the California Class. Plaintiff reserves the right to amend the Complaint and seek damages at the appropriate time under Cal. Civl Code. § 1782.

65. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market its mattresses with unqualified Made in USA claims. Injunctive relief is appropriate because Defendant continues to deceptively market the mattresses as "Crafted in the U.S.A." and using similar Made in USA phrasing. Plaintiff desires to purchase a mattress in the future, and Plaintiff would buy Defendant's mattresses if she knew Defendant's advertising claims were truthful. But given Defendant's deception with respect to the Made in USA claims, Plaintiff cannot trust Defendant's advertising claims about the mattresses absent injunctive relief. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California class, which cannot be achieved through available legal remedies.

66. Plaintiff also seeks public injunctive relief to protect the general public from Defendant's conduct. Defendant's deceptive advertising is ongoing and will continue to harm the public absent a

permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

67. A CLRA venue affidavit pursuant to Cal. Civ. Code §1780(d) is attached as **Exhibit 1**.

## COUNT III

## Violation of California's False Advertising Law ("FAL"),

## Bus. & Prof. Code § 17500, et. seq.

*(On Behalf of Plaintiff and the California Class)*

68. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

69. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

70. The FAL prohibits not only advertising that is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

71. Defendant violated section 17500 when it advertised and marketed its mattresses through deceptive and misleading representations and omissions disseminated to the public that the mattresses are made in the United States, including by claiming the mattresses are "Crafted in the U.S.A." and similar phrasing. In fact, Defendant's mattresses are not made in the United States.

72. Plaintiff reasonably relied on Defendant's deceptive, untrue, and misleading advertising. The misleading Made in USA claims were material because a reasonable consumer would consider whether a product was made in the United States an important factor in deciding to purchase the product. The Made in USA claims were a substantial factor in Plaintiff's decision to purchase Defendant's mattress.

73. Defendant's violations of the FAL directly and proximately caused injury in fact and damages to Plaintiff and the California Class. Absent Defendant's misrepresentations, Plaintiff would not have purchased Defendant's mattress or would have paid substantially less for it.

74. Plaintiff seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Class.

75. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market its mattresses with unqualified Made in USA claims. Injunctive relief is appropriate because Defendant continues to deceptively market the mattresses as "Crafted in the U.S.A." and similar Made in USA phrasing. Plaintiff desires to purchase a mattress in the future, and Plaintiff would buy Defendant's mattresses if she knew Defendant's advertising claims were truthful. But given Defendant's deception with respect to the Made in USA claims, Plaintiff cannot trust Defendant's advertising claims about the mattresses absent injunctive relief. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California class, which cannot be achieved through available legal remedies.

76. Plaintiff also seeks public injunctive relief to protect the general public from Defendant's conduct. Defendant's deceptive advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## COUNT IV

**Violation of the California Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200,** *et seq.*

*(On Behalf of Plaintiff and the California Class)*

77. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

78. The California Unfair Competition Law ("UCL") prohibits, inter alia, "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."[20]

79. Plaintiff, California Class Members, and Defendant are each a "person" under Cal. Bus. & Prof. Code § 17201.

80. The acts, omissions, and conduct of Defendant as alleged herein constitute "business practices" within the meaning of the UCL.

---

[20] CAL. BUS. & PROF. CODE §§ 17200, 17203–04, 17206.

16
CLASS ACTION COMPLAINT

81. Plaintiff and California Class Members bring their claims for injunctive relief as they have no confidence that Defendants have altered their practices. They have an interest in ensuring that false Made in USA advertising is stopped to serve as a deterrent to other companies and to ensure that they can rely on Made in USA advertising as accurate.

82. **Unlawful prong:** Defendant engaged in unlawful business practices by violating the CLRA, FAL, and the FTC Act (including the FTC's Made in USA regulations) as alleged above.

83. **Fraudulent prong:** As alleged above, Defendant's Made in USA advertising involved unfair, deceptive, and misleading advertising that is likely to deceive members of the public.

84. **Unfair prong:** Defendant's conduct is unfair because Defendant's representations and omissions regarding its mattresses are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct. The harm to consumers greatly outweighs the public utility of Defendant's conduct. As determined by both the federal government (on a bipartisan basis) and the California legislature, there is zero public utility to companies falsely advertising their products as made in the United States when in fact they are not. The practice only harms consumers and American manufacturers. Defendant's practice is therefore also immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Plaintiff and the California Class could not have reasonably avoided their injury.

85. Plaintiff reasonably relied on Defendant's deceptive, untrue, and misleading advertising. The misleading Made in USA claims were material because a reasonable consumer would consider whether a product was made in the United States an important factor in deciding to purchase the product. The Made in USA claims were a substantial factor in Plaintiff's decision to purchase Defendant's mattress.

86. Defendant's violations of the UCL directly and proximately caused injury in fact and damages to Plaintiff and the California Class. Absent Defendant's misrepresentations, Plaintiff would not have purchased Defendant's mattress or would have paid substantially less for it.

87. Plaintiff seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Class.

88. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market its mattresses with unqualified Made in USA claims. Injunctive relief is appropriate because Defendant continues to deceptively market the mattresses as "Crafted in the U.S.A." and similar Made in USA phrasing. Plaintiff desires to purchase a mattress in the future, and Plaintiff would buy Defendant's mattresses if she knew Defendant's advertising claims were truthful. But given Defendant's deception with respect to the Made in USA claims, Plaintiff cannot trust Defendant's advertising claims about the mattresses absent injunctive relief. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California class, which cannot be achieved through available legal remedies.

89. Plaintiff also seeks public injunctive relief to protect the general public from Defendant's conduct. Defendant's deceptive advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## COUNT V

### Breach of Contract

*(On Behalf of Plaintif and the Nationwide Class)*

90. Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

91. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Class.

92. Plaintiff and the Class Members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's Website. These contracts were formed at the time Plaintiff and the Class accepted Defendant's offer to sell mattresses based on Defendant's material representations and placed orders on the Website. The contracts were memorialized in order confirmations that were sent to purchasers.

93. The contracts provided that Plaintiff and Class Members would pay Defendant for the mattresses ordered.

94. The contracts further required that Defendant provide Plaintiff and the Class with mattresses that were Made in the USA consistent with California and federal law and Defendant's representations on the Website. These were specific and material terms of the contracts.

95. The Made in USA claims about the mattresses were specific and material terms of each contract, and the Made in USA claims were displayed to Plaintiff and the Class at the time they placed their orders on the Website.

96. Plaintiff and the Class paid Defendant for the mattresses they ordered and satisfied all other conditions of their contracts.

97. Defendant breached the contracts with Plaintiff and the Class by failing to provide mattresses that were Made in the USA as claimed on the Website. Defendant instead charged Plaintiff and the Class for mattresses that were substantially made from foreign-sourced materials. Defendant did not provide the mattresses that it had promised.

98. As a direct and proximate result of Defendant's breaches, Plaintiff and the Class were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment in her favor as follows:

a. Certification of the Classes pursuant to the provisions of Fed. R. Civ. P. 23 and an order that notice be provided to all Class Members;

b. Designation of Plaintiff as representative of the respective Classes and the undersigned counsel as Class Counsel;

c. An award of damages in an amount to be determined at trial or by this Court;

d. Declaring that Defendant's past conduct was unlawful, as alleged herein;

e. Declaring Defendant's ongoing conduct is unlawful, as alleged herein;

f. Enjoining Defendant from continuing the unlawful practices described herein, and awarding such injunctive and other equitable relief as the Court deems just and proper;

  g.  Awarding Plaintiff and the Class Members restitution and/or disgorgement of profits unlawfully obtained;

  h.  Awarding Plaintiff and the Class Members pre-judgment and post-judgment interest;

  i.  Awarding Plaintiff and the Class Members reasonable attorneys' fees, costs, and expenses; and

  j.  Granting such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Classes, demands a trial by jury of any and all issues in this action so triable of right.

Respectfully submitted,

**ZIMMERMAN REED LLP**

Dated: December 17, 2025

/s/ Ryan J. Ellersick
Ryan J. Ellersick (SBN 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel (877) 500-8780
Fax (877) 500-8781
ryan.ellersick@zimmreed.com

Zain A. Shirazi (SBN 302841)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel (612) 341-0400
Fax (612) 341-0844
zain.shirazi@zimmreed.com

Christopher D. Jennings*
Tyler B. Ewigleben*
**JENNINGS & EARLEY PLLC**
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
Chris@jefirm.com
Tyler@jefirm.com

*pro hac vice to be filed*

*Attorneys for Plaintiff and the Putative Classes*